FILED
CLERK, U.S. DISTRICT COURT

JUL -9 2008

CENTRAL DISTRICT OF CALIFORNIA
BY                        DEPUTY

FILED

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

2007 DEC 18  PM 4: 05

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY
DEPUTY CLERK

| | | |
|---|---|---|
| **LST FINANCIAL, INC.** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO.** _____ |
| | § | |
| **EDEBITPAY, LLC, A California** | § | **SA07CA1030 OG** |
| **Limited Liability Company** | § | |

CV08 - 04485 AHM (FFMx)

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT

    Now comes Plaintiff, LST Financial, Inc., and files this it Original Complaint complaining of Defendant, eDebitPay, LLC, and for its cause of action would show the Court the following:

### I.
### PARTIES

    1.    Plaintiff, LST Financial, Inc. is a Delaware corporation that has its principal place of business in San Antonio, Bexar County, Texas. Plaintiff is an automated clearing house ("ACH") processor. Pursuant to a contract with the United States Federal Reserve that requires it to comply with Federal Reserve requirements and rules of the National Automated Clearing House Association ("NACHA") and also pursuant to contracts with depository financial institutions, it is, with proper authorization, permitted to electronically transfer funds from one account to another account.

    2.    Defendant, eDebitPay is a California limited liability company that markets products such as consumer payday loans and debit cards to "sub-prime" consumers. Defendant is being sued by the United States Federal Trade Commission for its deceptive consumer practices.

Defendant is located, and may be served by serving its registered agent for service of process, Dale Paul Cleveland at 5301 Laurel Canyon Blvd., Suite 132, Valley Village, California 91607.

## II.
### JURISDICTION

3.      This Court has subject matter jurisdiction over Plaintiff's claims because there is complete diversity between the parties and the amount in controversy exceeds the minimum jurisdictional requirements of this Court.

## III.
### VENUE

4.      Venue is appropriate in this Court because the General Terms and Conditions Master Application and Agreement ("Agreement") at the center of this dispute was entered into and became effective in San Antonio, Texas in June 2006. Moreover, Defendant breached various terms of the Agreement in San Antonio, Texas. Further, the Agreement between the parties contains a forum selection clause specifying that disputes arising under the Agreement are to be resolved in San Antonio, Texas, including the United States Courts District Court for the Western District of Texas. A copy of the Agreement is attached hereto as Exhibit 1.

## IV.
### FACTS

5.      In 2006, Defendant was terminated by its ACH processor and began seeking a replacement to provide services to it. Defendant contacted Monterrey County Bank ("MCB") with whom it did business. MCB referred Defendant to Plaintiff as a provider of ACH services. In an e-mail sent on behalf of the Defendant, MCB informed Plaintiff's Managing Director, Greg Colton, that eDebitPay was interested in its services, but it was "no emergency or rush deal" and that "they [Plaintiff] will call to check out LST's services."

6.      Following negotiations and the parties entering into the Agreement, which was finalized by Plaintiff's execution of the Agreement in San Antonio, LST began providing ACH services to eDebitPay in July 2006. As a result of eDebitPay's tactics and deceptive practices toward consumers, Plaintiff (and MCB) began receiving unprecedented amounts of consumer reversals, returns and complaints concerning consumer transactions processed at Defendant's behest.

7.      Defendant breached paragraph 7.1 of Attachment A of the Agreement which requires, in relevant part, that:

> CUSTOMER shall comply with the Governmental Requirements, which includes all Rules, State and Federal laws, and Regulation E, when initiating an Entry into the LST FINANCIAL ACH System. CUSTOMER shall be solely liable for any and all fees, fines and other financial liability if CUSTOMER fails to comply with all Governmental Requirements.

Among other things, Defendant failed to properly disclose the true price of their services or even the fact that the consumers' bank accounts would be charged.

8.      Defendant also breached other provisions of Attachment A of the Agreement including, but not limited to, paragraphs 4.6, 7.2, 7.5, 8.2, 9.1 10.2, 11.1, 11.2, 12.2 and also paragraphs 2.3, 3.3, 7.1 and 7.2 of the Agreement. In November 2006, the parties ceased working together to process Defendant's transactions.

9.      As a result of Defendant's deceptive actions towards consumers that breached the parties' Agreement, numerous consumers made complaints and reversed and returned transactions processed by the Plaintiff on behalf of Defendant. In fact, approximately 85% of eDebitPay's transactions were reversed or returned by consumers which is a rate approximately 70 times the national average for reversals returns processed by ACH processors. Specifically, consumers reversed and returned approximately 138,000 eDebitPay transactions. These reversals

and returns resulted in approximately 16 million dollars in transactions that had to be reversed, causing contractual chargebacks owed by Defendant to Plaintiff. These staggering volumes of customer reversals and returns and Plaintiff's breaches have caused Plaintiff damages, costs and expenses for which Defendant seeks recovery.

10.    As a result of non-payment of transaction fees, fees for professional services provided by Plaintiff for which no payment was made, over limit, application and other fees, returned transaction fees, suspension and reinstatement charges, chargeback and reversal fees pursuant to the Agreement, which have not been paid by Defendant, Plaintiff is owed in excess of $400,000.00 by Defendant after offsets from sums held in reserve by Plaintiff.

11.    Moreover, the Agreement between the parties was terminated in November 2006. Pursuant to the Attachment A.1.(b) of the Agreement, Plaintiff is entitled to recover 25% of the monthly revenue averaged over the preceding three months for the remaining term of the Agreement, a period of approximately two and one-half years. Thus, Defendant owes Plaintiff approximately $345,000.00 in contractual termination fees, which it has failed and refused to pay.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that upon final trial, this Court enter a judgment awarding Plaintiff the damages it sustained as a result of Defendant's breaches of the parties' Agreement in an amount to be decided at trial. In addition, pursuant to § 38.001 of the Texas Civil Practice Remedies and Practice Code, Plaintiff requests that it be awarded its reasonable and necessary attorney fees incurred in bringing this action to recover for Plaintiff's breaches together with costs of Court, pre- and post-judgment interest at the maximum rate allowable by law, and all such other and further relief to which it is justly entitled.

Plaintiff hereby demands a trial by jury.

Respectfully submitted,

Robert A. Rapp
State Bar No. 16550850
**Law Offices of Robert Rapp**
201 E. Commerce, Suite 370
San Antonio, Texas 78205
(210) 224-4664
(210) 224-4642 - fax

*Attorney for Plaintiff*

C:\3370.000\FEDERAL COURT\PLEADINGS\POP.doc

1

# LST FINANCIAL, INC.
## Contract Signature Process

This Checklist has been provided to assist you in implementing your LST FINANCIAL Services.  Please complete the following steps, in the order identified, to enable LST FINANCIAL to implement and provision your Service request quickly and accurately:

- Customer Signature required on two attached original contracts.

- Together with the attached "*Facsimile Cover Sheet*", please fax ALL of the LST FINANCIAL contract pages from one signed original contact to LST FINANCIAL Contract Management at:

  ### (210) 892-2599

- Send both signed original contracts and any additional required documentation via over-night mail to:

  LST FINANCIAL, INC.
  CONTRACT MANAGEMENT
  7333 CARIBOU
  SAN ANTONIO, TX 78238

- One copy will be returned to you via UPS letter

## FACSIMILE TRANSMITTAL SHEET

| | |
|---|---|
| TO:<br>**LST FINANCIAL  Contract Management** | FROM:   eDebitPay, LLC. |
| COMPANY:<br>**LST FINANCIAL, INC.** | DATE: June            19th      2006 |
| FAX NUMBER:<br>**210-892-2599** | : |
| PHONE NUMBER:<br>**210-892-2600** | **SENDER'S REFERENCE NUMBER:** |
| RE:<br>**LST FINANCIAL Service Contract** | **LST FINANCIAL REFERENCE NUMBER:**<br>10000081100600619 |

☑ URGENT          ☑ FOR REVIEW          ☐ PLEASE COMMENT          ☐ PLEASE REPLY   ☐ PLEASE RECYCLE

Please review and approve the attached Contract for LST FINANCIAL Service(s) from:

# GENERAL TERMS AND CONDITIONS
# MASTER APPLICATION AND AGREEMENT

**LST FINANCIAL MA Reference No.** <u>10000081100600619</u>

| CUSTOMER Legal Name | LST FINANCIAL, INC. |
|---|---|
| eDebitPay, LLC. | LST FINANCIAL, INC. |
| **CUSTOMER Address** | **LST FINANCIAL Address** |
| 5301 Laurel Canyon Blvd. Suite 132<br>Valley Village, CA 91607 | **7333 Caribou**<br>**San Antonio, TX 78238** |
| **CUSTOMER Contact** | **LST FINANCIAL Contact** |
| Please Fill In This Section:<br>Name: William R. Wilson<br>Title:   President<br>Telephone: (310) 848-9498<br>Fax: (818) 487-0675<br>Email: adam@edebitpay.com | LST FINANCIAL Contract Management<br>Contract Management<br>(210) 892-2600<br>(210) 892-2599<br>CustomerService@LSTFinancial.com |
| **CUSTOMER Billing Address (if different than above)** | |

This Agreement consists of this Cover Page, the attached General Terms and Conditions and all Service Attachments ("Attachments") attached hereto or subsequently signed by the parties (collectively, this "Agreement").  In the event of conflict between the General Terms and Conditions and any Attachment, the Attachment shall take precedence.

This Agreement shall become effective when signed by both parties and shall continue in effect for as long as any Attachment remains in effect, unless earlier terminated in accordance with the provisions of the Agreement.  The term of each Attachment is stated in the Attachment.

**As of the effective date of this Agreement, the Attachments are as follows:**

| Financial Transaction Services | Ancillary Products & Services |
|---|---|
| ☑ LST FINANCIAL ACH/EFT Processing | ☐ LST FINANCIAL Custom Development Services |
| ☐ LST FINANCIAL Wire Transfer  Processing | ☐ LST FINANCIAL Background Check/Skip Tracing Services |
| ☐ LST FINANCIAL Check Guarantee Services | ☐ LST FINANCIAL Identification Verification |
| ☐ LST FINANCIAL Negative Verification Services | ☐ LST FINANCIAL Age Verification Services |
| ☐ LST FINANCIAL Business Check 21 Conversion | ☐ LST FINANCIAL Patriot Act/OFAC Services |
| ☐ LST FINANCIAL Credit/Debit/EBT Processing | ☐ LST FINANCIAL Bankruptcy Services |
| ☐ LST FINANCIAL ATM Processing | ☐ LST FINANCIAL Directory Assistance Services |
| ☑ LST FINANCIAL Consolidated Return Processing | ☐ LST FINANCIAL Other Research Services |
| ☐ LST FINANCIAL Payroll Services | Type: _____ |
| ☐ LST FINANCIAL Electronic Tax Filing Services | ☐ LST FINANCIAL EPS Software |
| ☐ LST FINANCIAL Signature Card Issuing Service | ☐ LST FINANCIAL WEPS Software |
| ☐ LST FINANCIAL PIN Card Issuing Service | ☑ LST FINANCIAL WSEPS SDK |
| ☐ LST FINANCIAL Non-FCRA Research and Analysis Services | ☐ LST FINANCIAL WSEPS Direct Access |
| ☐ LST FINANCIAL FCRA Research and Analysis | ☐ LST FINANCIAL Merchant Terminal/Hardware |
| ☐ LST FINANCIAL Bill  Payment Service | Type: _____ |
| ☐ LST FINANCIAL Bulk Printing/Mailing Service | ☐ Third Party Gateway Services |
| ☐ LST FINANCIAL Accounting Integration Services | Name: _____ |
| ☐ LST FINANCIAL Fatal Transaction Services | ☐ LST FINANCIAL Services for Resale |

LST FINANCIAL CONFIDENTIAL AND PROPRIETARY – NOT FOR DISCLOSURE

Initials _____

10/20/2005

# GENERAL TERMS AND CONDITIONS

The following terms and conditions shall apply to the provision and use of the products and Services (individually a "Service" and collectively the "Services") provided pursuant to the Attachments.

**1.0 DEFINITIONS**

1.1 "LST FINANCIAL" means any entity controlled by or under common control with LST FINANCIAL, and any entity which LST FINANCIAL has contracted with to offer a Service or part of any Service.

1.2 "Content" means Information made available, displayed or transmitted in connection with a Service (including, without limitation, Information made available by means of an HTML, PDF, SOAP, XML, TEXT, a third party, or similar means) including all data, Information, trademarks, Service marks, and domain names contained therein, including any and all Content provided therein, as well as, all updates, upgrades, modifications, and other versions of any of the foregoing.

1.3 "Information" means all documentation, technical Information, financial Information, public Information, private Information, consumer Information, business Information, Software, or other materials that are disclosed by either party to the other in the course of performing this Agreement

1.4 "USER" means anyone who uses or accesses any Service purchased by CUSTOMER under this Agreement.

**2.0 CHARGES AND BILLING**

2.1 CUSTOMER agrees and warrants it will pay LST FINANCIAL at the rates set forth in this contract for any and all equipment purchased, installed, or Services actually performed on behalf of CUSTOMER. Payment for such equipment or Services shall be automatically deducted from any sum due CUSTOMER in the process of providing the Services, unless another provision is stated elsewhere in this contract, or any exhibits attached hereto.

2.2 CUSTOMER shall not delay LST FINANCIAL from beginning or completing work as specified in this contract.

2.3 CUSTOMER shall pay LST FINANCIAL for its and Users' use of the Services at the rates and charges specified in the Attachments, without deduction, setoff or delay for any reason, including circumstances arising under any other Attachment. Charges set forth in the Attachments are exclusive of any applicable taxes. CUSTOMER may be required at any time to pay a deposit if LST FINANCIAL determines that CUSTOMER is not creditworthy, or as specified in Section 10.1, or risks and liability increase as determined by LST FINANCIAL, and LST FINANCIAL may automatically deduct any such amount from the CUSTOMERS bank account, or from any sum due LST FINANCIAL in the process of providing the Services, however, LST FINANCIAL must inform CUSTOMER in writing upon doing so.

2.4 CUSTOMER shall pay all shipping charges, taxes (excluding those on LST FINANCIAL'S net income) and other similar charges (and any related interest and penalties) relating to the sale, transfer of ownership, installation, license, use or provision of the Services, except to the extent a valid tax exemption certificate is provided by CUSTOMER to LST FINANCIAL prior to the delivery of the Services, and all reasonable costs associated with providing the Services.

2.5 Payment is due within 30 days of receiving an invoice and shall refer to the invoice number on payment. Restrictive endorsements or other statements on checks accepted by LST FINANCIAL will not apply. CUSTOMER shall reimburse LST FINANCIAL for all costs (including reasonable attorney fees) associated with collecting delinquent or dishonored payments. At LST FINANCIAL'S option, CUSTOMER will pay a $100.00 late fee plus $25.00 for each day in which the payment is past due; or interest charges may be added to any past due amounts at the lower of 1.5% per month or the maximum rate allowed by law. Should CUSTOMER become past due for greater than 15 days, LST FINANCIAL reserves the right to demand payment in full, payable immediately, and reserves the right to terminate the Services.

2.6 CUSTOMER shall pay LST FINANCIAL a fee not less than $25.00 or the maximum amount allowable by law for any payment returned, unpaid, for any reason.

**3.0 RESPONSIBILITIES OF THE PARTIES**

3.1 LST FINANCIAL shall provide Services to the CUSTOMER in accordance with the terms and conditions, and at the charges specified in this Agreement, consistent with all applicable laws and regulations.

3.2 CUSTOMER agrees to provide LST FINANCIAL any and all information requested, relating to the Services, immediately upon request.

3.3 CUSTOMER shall assure that its and Users' use of the Services and the Content will at all times comply with all applicable laws, regulations and written and electronic instructions for use. LST FINANCIAL reserves the right to terminate affected Attachments, suspend affected Services, and/or remove CUSTOMER or Users' access from the Services if LST FINANCIAL determines that such use or Content does not conform with the

requirements set forth in this Agreement or receives notice from anyone that the CUSTOMER'S use or access may violate any laws or regulations. LST FINANCIAL'S actions or inaction under this Section shall not constitute review or approval of CUSTOMER'S or Users' use or Content. LST FINANCIAL will use reasonable efforts to provide notice to CUSTOMER of any violation or threatened violation of this Section 3.2 when reasonably practicable under the circumstances.

**4.0 USE OF INFORMATION**

4.1 All Information provided or disclosed in the course of providing Services under this Agreement shall be considered confidential and proprietary Information ("PROPRIETARY INFORMATION") of LST FINANCIAL. This Agreement is property of LST FINANCIAL

4.2 LST FINANCIAL'S PROPRIETARY INFORMATION shall, for a period of five (5) years following its disclosure (except in the case of Software, for an indefinite period): (i) be held in confidence; (ii) be used only for purposes of performing this Agreement (including in the case of LST FINANCIAL, the ability to monitor and record CUSTOMER transmissions in order to detect fraud, check quality, and to operate, maintain and repair the Services) and using the Services; and (iii) not be disclosed except to the receiving party's employees, agents and contractors having a need-to-know (provided that such agents and contractors are not direct competitors of either party and agree in writing to use and disclosure restrictions as restrictive as this Article 4), or to the extent required by law (provided that prompt advance notice is provided to the disclosing party to the extent practicable).

4.3 The restrictions in Section 4.2 shall not apply to any Information that: (i) is independently developed by the receiving party; or (ii) is lawfully received by the receiving party free of any obligation to keep it confidential; or (iii) becomes generally available to the public other than by breach of this Agreement.

**5.0 PUBLICITY AND MARKS**

5.1 No public statements or announcements relating to this Agreement shall be issued by either party without the prior written consent of the other party.

5.2 Each party agrees not to display or use, in advertising or otherwise, any of the other party's trade names, logos, trademarks, Service marks or other indicia of origin (collectively "Marks") without the other party's prior written consent, provided that such consent may be revoked at any time.

**6.0 SOFTWARE**

6.1 LST FINANCIAL grants CUSTOMER a personal, non-transferable, and non-exclusive license (without the right to sublicense) to use, in compiled form, all software and associated written and electronic documentation and data furnished pursuant to the Attachments (collectively, the "Software"), solely in connection with the Services and solely in accordance with applicable written and electronic documentation. CUSTOMER will refrain from taking any steps to reverse assemble, reverse compile or otherwise derive a source code version of the Software. The Software shall at all times remain the sole and exclusive property of LST FINANCIAL or its suppliers. "Third-Party Software" means Software that bears a copyright notice of a third party. "LST FINANCIAL Software" means all Software other than Third-Party Software.

6.2 CUSTOMER shall not copy or download the Software, except to the extent expressly provided otherwise in the applicable documentation for the Service or in a written authorization signed by LST FINANCIAL. Any copy must contain the same copyright notices and proprietary markings as the original Software.

6.3 CUSTOMER shall assure that its Users comply with the terms and conditions of Article. 6.0. The term of the license granted hereunder shall be coterminous with the Attachment which covers the Software.

6.4 CUSTOMER agrees to comply with any additional restrictions that are provided with any Third-Party Software.

6.5 LST FINANCIAL warrants that all LST FINANCIAL Software will perform substantially in accordance with its applicable published specifications during a warranty period of ninety (90) days beginning on the date of delivery of the LST FINANCIAL Software to CUSTOMER. If CUSTOMER returns to LST FINANCIAL, within the ninety (90) day warranty period, any LST FINANCIAL Software that does not comply with this warranty, then LST FINANCIAL, at its option, will either repair or replace the portion of the LST FINANCIAL Software that does not comply or refund the amount paid by CUSTOMER for such failed or defective LST FINANCIAL Software. This warranty shall apply only if the LST FINANCIAL Software is used in accordance with the terms of this Agreement and is not altered, modified or tampered with by CUSTOMER or Users.

**7.0 DISPUTE RESOLUTION**

7.1 Except as described in Section 7..2, all disputes, controversies or claims, whether based in contract, tort, statute, fraud, misrepresentation or any

LST FINANCIAL CONFIDENTIAL AND PROPRIETARY – NOT FOR DISCLOSURE

Initials _____

## GENERAL TERMS AND CONDITIONS

other legal theory, arising out of or relating to this Agreement and the Services provided under this Agreement (collectively, "Disputes"), not resolved amicably between the parties shall be settled by final and binding arbitration conducted in Texas, or other mutually agreed location by one neutral arbitrator, in accordance with this Agreement and the then current Commercial Arbitration Rules of the American Arbitration Association ("AAA"). LST FINANCIAL shall provide a list of not less than 3 qualified and impartial attorneys to CUSTOMER from which the arbitrator shall be selected. The arbitrability of Disputes shall be determined by the arbitrator. Each party shall bear its own expenses and the parties shall equally share the expenses of the arbitrator, except that the arbitrator shall be entitled to award a different allocation of costs and fees where the arbitrator determines that a filed claim is frivolous. Any award of the arbitrator shall be in writing and shall state the reasons for the award. Judgment upon an award may be entered in any Court having competent jurisdiction. The arbitrator shall not have the power to award any damages in excess of the liability limitations set forth in this Agreement, including any Attachment. The arbitrator shall not have the power to order pre-hearing discovery of documents or the taking of depositions, but may compel attendance of witnesses and the production of documents at the hearing. The Federal Arbitration Act, 9 U.S.C. Sections 1 to 14, shall govern the interpretation and enforcement of this Section 7.1.The parties agree that the provisions of this contract shall be governed by the laws of the State of Texas, and that in the event of litigation or any arbitration, the matter will be heard exclusively in any Texas State Court within the County of Bexar, or in the Federal District Court for the Western District of Texas, San Antonio Division in the City of San Antonio.

7.2   The parties agree that the provisions of this contract shall be governed by the laws of the State of Texas, and that in the event of litigation or any arbitration, the matter will be heard exclusively by the courts of the State of Texas or the arbitration will be conducted in the State of Texas, except as noted in Section 7.1. LST FINANCIAL retains the right to seek litigation instead of or in addition to arbitration if LST FINANCIAL feels it is in the best interest of LST FINANCIAL, and LST FINANCIAL hereby is granted the sole choice of venue.

7.3   The parties, their representatives and participants, and the arbitrator shall hold the existence, Content and result of the arbitration in confidence, except to the limited extent necessary to enforce a final settlement agreement or to obtain or enforce a judgment on an arbitration decision and award.

7.4   Disputes relating to: (i) the lawfulness of rates, terms, conditions or practices concerning Services that are subject to the Communications Act of 1934, as amended, or the rules and regulations of the FCC, a state public utility commission or other administrative agency; or (ii) non-compliance with Articles 4, 5 or 6 of this Agreement, a violation of which would cause irreparable harm for which damages would be inadequate; or (iii) billing or payment of charges under an Attachment where the amount in controversy is less than $50,000; or (iv) Software, technology or other intellectual property; shall be exempt from the binding arbitration requirement described in Section 7.1.  As to Disputes described in this Section 7.4, the claimant reserves the right to seek relief from an administrative agency or a Court of competent jurisdiction, as appropriate.

**8.0   FORCE MAJEURE**
Neither LST FINANCIAL nor CUSTOMER shall be liable for any delay, failure in performance, loss or damage due to:  fire, explosion, power blackout, earthquake, flood, the elements, strike, embargo, labor disputes, acts of civil or military authority, war, acts of God, acts or omissions of carriers or suppliers, acts of regulatory or governmental agencies, or other causes beyond such party's reasonable control, whether or not similar to the foregoing, except that CUSTOMER's obligation to pay for charges incurred for Services received by CUSTOMER shall not be excused.

**9.0   LIMITATIONS OF LIABILITY**
9.1   For purposes of Articles 8, 9 and 11 and all other exclusive remedies and limitations of liability set forth in this Agreement or any Attachment, "LST FINANCIAL" shall be defined as LST FINANCIAL, its Affiliates, and its and their employees, directors, officers, agents, representatives, subcontractors, interconnection Service providers and suppliers; and "CUSTOMER" shall be defined as CUSTOMER, its Affiliates, and its contractors, and their employees, directors, officers, agents, and representatives; and "Damages" will refer collectively to all injury, damage, liability, loss, penalty, interest and expense incurred.

9.2   EITHER PARTY'S ENTIRE LIABILITY AND THE OTHER PARTY'S EXCLUSIVE REMEDIES, FOR ANY DAMAGES CAUSED BY ANY SERVICE DEFECT OR FAILURE, OR FOR OTHER CLAIMS ARISING IN CONNECTION WITH ANY SERVICE OR PERFORMANCE OR NON-PERFORMANCE OF OBLIGATIONS UNDER THIS AGREEMENT SHALL BE:

(i)   FOR BODILY INJURY OR DEATH TO ANY PERSON, OR REAL OR TANGIBLE PROPERTY DAMAGE, NEGLIGENTLY CAUSED BY A PARTY, OR DAMAGES ARISING FROM THE WILLFUL MISCONDUCT OF A PARTY OR A BREACH OF THE PROVISIONS OF ARTICLES 4 OR 5, THE OTHER, PARTY'S RIGHT TO RECOVER DIRECT DAMAGES;

(ii)   FOR DEFECTS OR FAILURES OF SOFTWARE, THE REMEDIES SET FORTH IN SECTION 6.6;

(iii)   FOR INDEMNITY, THE REMEDIES SET FORTH IN ARTICLE 11;

(iv)   FOR DAMAGES OTHER THAN THOSE SET FORTH ABOVE AND NOT EXCLUDED UNDER THIS AGREEMENT OR ANY ATTACHMENT, EACH PARTY'S LIABILITY SHALL BE LIMITED TO PROVEN DIRECT DAMAGES NOT TO EXCEED PER CLAIM (OR IN THE AGGREGATE DURING ANY TWELVE (12) -MONTH PERIOD) AN AMOUNT EQUAL TO THE TOTAL NET PAYMENTS PAYABLE BY CUSTOMER FOR THE APPLICABLE SERVICE UNDER THE APPLICABLE ATTACHMENT DURING THE TWELVE (12) MONTHS PRECEDING THE MONTH IN WHICH THE DAMAGE OCCURRED. THIS SECTION 9.2(iv) SHALL NOT LIMIT CUSTOMER'S RESPONSIBILITY FOR THE PAYMENT OF ANY AND ALL PROPERLY DUE CHARGES UNDER THIS AGREEMENT.

9.3   EXCEPT FOR THE PARTIES' ARTICLE 11 INDEMNIFICATION OBLIGATIONS, LST FINANCIAL SHALL NOT BE LIABLE TO THE OTHER PARTY FOR ANY INDIRECT, INCIDENTAL, CONSEQUENTIAL, PUNITIVE, RELIANCE OR SPECIAL DAMAGES, INCLUDING WITHOUT LIMITATION, DAMAGES FOR LOST PROFITS, ADVANTAGE, SAVINGS, OR REVENUES OF ANY KIND OR INCREASED COST OF OPERATIONS, WHETHER OR NOT LST FINANCIAL HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

9.4   LST FINANCIAL ALSO SHALL NOT BE LIABLE FOR ANY DAMAGES ARISING OUT OF OR RELATING TO: INTEROPERABILITY, INTERACTION OR INTERCONNECTION PROBLEMS WITH APPLICATIONS, EQUIPMENT, SERVICES OR NETWORKS PROVIDED BY CUSTOMER OR THIRD PARTIES; SERVICE INTERRUPTIONS OR LOST OR ALTERED MESSAGES OR TRANSMISSIONS, EXCEPT AS OTHERWISE PROVIDED IN AN ATTACHMENT OR TARIFF; OR, UNAUTHORIZED ACCESS TO OR THEFT, ALTERATION, LOSS OR DESTRUCTION OF CUSTOMER'S, USERS' OR THIRD PARTIES' APPLICATIONS, CONTENT, DATA, PROGRAMS, INFORMATION, NETWORK OR SYSTEMS.

9.5   EXCEPT AS EXPRESSLY PROVIDED IN THIS AGREEMENT, LST FINANCIAL MAKES NO WARRANTIES, EXPRESS OR IMPLIED, AND SPECIFICALLY DISCLAIMS ANY WARRANTY OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, TITLE OR NON-INFRINGEMENT OR ANY WARRANTY ARISING BY USAGE OF TRADE, COURSE OF DEALING OR COURSE OF PERFORMANCE. LST FINANCIAL DOES NOT WARRANT THAT THE SERVICES WILL BE UNINTERRUPTED OR ERROR-FREE, OR THAT THE SERVICES WILL MEET CUSTOMER'S REQUIREMENTS OR THAT THE SERVICES WILL PREVENT UNAUTHORIZED ACCESS BY THIRD PARTIES. LST FINANCIAL DOES NOT AUTHORIZE ANYONE TO MAKE A WARRANTY OF ANY KIND ON ITS BEHALF AND CUSTOMER SHOULD NOT RELY ON ANYONE MAKING SUCH STATEMENTS.

9.6   EXCEPT AS EXPRESSLY PROVIDED IN THIS AGREEMENT, LST FINANCIAL SHALL HAVE A MAXIMUM LIABILITY OF $100.00 TO THE OTHER PARTY.

9.7   THE LIMITATIONS OF LIABILITY SET FORTH IN THIS ARTICLE 9 AND IN ANY ATTACHMENT SHALL APPLY:  (i) REGARDLESS OF THE FORM OF ACTION, WHETHER IN CONTRACT, TORT, STRICT LIABILITY OR OTHERWISE; AND (ii) WHETHER OR NOT DAMAGES WERE FORESEEABLE. THESE LIMITATIONS OF LIABILITY SHALL SURVIVE FAILURE OF ANY EXCLUSIVE REMEDIES PROVIDED IN THIS AGREEMENT.

9.8   THIS AGREEMENT DOES NOT EXPRESSLY OR IMPLICITLY PROVIDE ANY THIRD PARTY (INCLUDING USERS) WITH ANY REMEDY, CLAIM, REIMBURSEMENT, CAUSE OF ACTION, OR OTHER RIGHT OR PRIVILEGE.

**10.0   TERMINATION**
10.1   If a Customer fails to perform or observe any material term or condition of this Agreement and the failure continues unremedied for fifteen (15) days after receipt of written notice, (i) LST FINANCIAL  may terminate for cause any Attachment affected by the breach, or (ii) where the failure is a non-payment by CUSTOMER of any charge when due, LST FINANCIAL may, at its option, terminate affected Attachments, suspend Service under affected Attachments, require a deposit under any or all Attachments as a condition of continuing to provide Services and/or terminate this entire Agreement, and immediately demand the full contract price, and any monies owed shall be payable by certified funds or wire transfer within 5 days.

10.2   An Attachment may be terminated immediately upon written notice by:  (i) either party if the other party has violated the other party's Marks, becomes insolvent or involved in a liquidation or termination of its business, files a bankruptcy petition, has an involuntary bankruptcy petition filed against it (if not dismissed within thirty (30) days of filing), becomes adjudicated bankrupt, or becomes involved in an assignment for

LST FINANCIAL CONFIDENTIAL AND PROPRIETARY – NOT FOR DISCLOSURE

10/20/2005

Initials _____

## GENERAL TERMS AND CONDITIONS

the benefit of its creditors; or (ii) either party due to a material breach of any provision of Article 4, or LST FINANCIAL pursuant to Section 3.0 or due to a material breach by CUSTOMER of any provision of Article 6.

10.3  CUSTOMER shall be responsible for payment of all charges under a terminated Attachment incurred as of the effective date of termination. CUSTOMER shall also be liable to LST FINANCIAL for Termination Charges, if specified in a terminated Attachment, in the event that LST FINANCIAL terminates under Section 10.1 or 10.2, or CUSTOMER terminates without cause.

10.4  Termination by either party of an Attachment does not waive any other rights or remedies it may have under this Agreement.

10.5  Except as provided under Section 10.1, termination or suspension of an Attachment shall not affect the Services provided or the rights and obligations of the parties under any other Attachment.

### 11.0    INDEMNITY

11.1  LST FINANCIAL agrees to defend or settle, at its own expense, any third party claim or suit against CUSTOMER alleging that a Service furnished under this Agreement infringes any United States patent, trademark, copyright or trade secret, except where the claim or suit arises out of or results from:  CUSTOMER'S or User's Access in connection with the Service;  modifications made to the Service  or combinations of the Service with Services or products provided by CUSTOMER or others; LST FINANCIAL'S adherence to CUSTOMER'S written requirements; or, use of the Service in violation of this Agreement. LST FINANCIAL agrees to defend or settle, at its own expense and without prejudice to LST FINANCIAL or LST FINANCIAL'S continued provisioning of the Service to CUSTOMER or others, all claims or suits against LST FINANCIAL covered by the exceptions in the preceding sentence and shall immediately cease any activity which gives rise to the alleged infringement. The indemnifying party will also pay all Damages and costs (including reasonable attorneys' fees) that by final judgment may be assessed against the indemnified party due to infringement by the indemnifying party.

11.2  In the event of a claim of infringement for which LST FINANCIAL is the indemnifying party under Section 11.1, LST FINANCIAL may at its option either procure the right to continue using, or replace or modify, the alleged infringing Service so that the Service becomes non-infringing and substantially compliant with the requirements in the applicable Attachment. Upon inability to reasonably perform either of the foregoing options, LST FINANCIAL may terminate the affected Attachment, without liability other than as stated in Section 11.1.

11.3  LST FINANCIAL grants to CUSTOMER the right to permit Users to access and use the Services, provided that CUSTOMER shall remain solely responsible for the access and use by any User of the Services, and shall defend, indemnify and hold harmless LST FINANCIAL from and against all Damages arising out of third party claims and regardless of the form of action, whether in contract, tort, strict liability or otherwise, concerning or relating to:  any noncompliance by CUSTOMER or Users with any provision of this Agreement; negligent acts or omissions by CUSTOMER or Users; CUSTOMER'S or Users' Content; or any Service failure, defect or outage. CUSTOMER'S indemnification obligations do not apply to claims for Damages to real or tangible property or bodily injury or death negligently caused by LST FINANCIAL.

11.4  With respect to the indemnification obligations in this Article 11:  (i) the indemnified party will notify the indemnifying party in writing promptly upon learning of any claim or suit for which indemnification may be sought, provided that failure to do so shall not affect the indemnity except to the extent the indemnifying party is prejudiced thereby; (ii) the indemnifying party shall have control of the defense or settlement, provided that the indemnified party shall have the right to participate in such defense or settlement with counsel of its own selection and at its sole expense; and (iii) the indemnified party shall reasonably cooperate with the defense, at the indemnifying party's expense.

### 12.0    GENERAL PROVISIONS

12.1  Any supplement, modification or waiver of any provision of this Agreement must be in writing and signed by authorized representatives of both parties.  A waiver by either party of any breach of this Agreement shall not operate as a waiver of any other breach of this Agreement.

12.2  This Agreement may not be assigned by CUSTOMER without the prior written consent of LST FINANCIAL.

12.3  If any portion of this Agreement is found to be invalid or unenforceable, the remaining provisions shall remain in effect and the parties shall promptly begin negotiations to replace invalid or unenforceable portions that are essential parts of this Agreement.

12.4  Any initial demand for arbitration pursuant to Section 7.1 and any legal action arising in connection with this Agreement must begin within two (2) years after the cause of action arises or it is barred.

12.5  All notices under this Agreement shall be in writing and either mailed by certified or registered mail, postage prepaid return receipt requested, sent by express courier or hand delivered and addressed to each party at the address set forth on the Cover Page of this Agreement or, if the notice relates to a specific Attachment, the address set forth in such Attachment, or, in any case, such other address as a party designates in writing.

12.6  State law issues concerning construction, interpretation and performance of this Agreement shall be governed by the substantive law of the State of Texas, excluding its choice of law rules. The United Nations Convention on Contracts for International Sale of Goods shall not apply.

12.7  The respective obligations of CUSTOMER and LST FINANCIAL, which by their nature would continue beyond the termination or expiration of any Attachment or this Agreement, including, without limitation, the obligations regarding confidentiality, publicity and marks, limitations of liability and dispute resolution, shall survive termination or expiration.

12.8  This Agreement creates a Service provider/customer relationship between the parties and neither party's employees or contractors shall be considered employees, contractors, partners or agents of the other party.

12.9  THIS AGREEMENT CONSTITUTES THE ENTIRE AGREEMENT BETWEEN THE PARTIES WITH RESPECT TO THE SERVICES TO BE PROVIDED HEREUNDER.  THIS AGREEMENT SUPERSEDES ALL PRIOR AGREEMENTS, PROPOSALS, REPRESENTATIONS, STATEMENTS OR UNDERSTANDINGS, WHETHER WRITTEN OR ORAL, CONCERNING SUCH SERVICES OR THE RIGHTS AND OBLIGATIONS RELATING TO THOSE SERVICES.  THIS AGREEMENT SHALL NOT BE CONTRADICTED, EXPLAINED OR SUPPLEMENTED BY ANY WRITTEN OR ORAL STATEMENTS, PROPOSALS, REPRESENTATIONS, ADVERTISEMENTS, SERVICE DESCRIPTIONS OR CUSTOMER PURCHASE ORDER FORMS NOT EXPRESSLY SET FORTH IN THIS AGREEMENT OR AN ATTACHMENT.

**LST FINANCIAL CONFIDENTIAL AND PROPRIETARY – NOT FOR DISCLOSURE**

Initials _____

## GENERAL TERMS AND CONDITIONS

**IN WITNESS WHEREOF,** the parties hereto have executed this Master Agreement on this 19th day of June, 2006:

**CUSTOMER'S SIGNATURE BELOW ACKNOWLEDGES THAT CUSTOMER HAS READ AND UNDERSTANDS EACH OF THE TERMS AND CONDITIONS OF THIS AGREEMENT AND AGREES TO BE BOUND BY THEM.**

CUSTOMER: eDebitPay, LLC.
(Legal Name)

By: _____
(Authorized Signature)

William R. Wilson
(Typed or Printed Name)

President
(Title)

06/19/2006
(Date)

LST FINANCIAL

By: _____
(Authorized Signature)

Gregory Colton
(Typed or Printed Name)

Managing Director
(Title)

06/19/2006
(Date)

**ATTACHMENT A**
**ACH PROCESSING SERVICES**

**LST FINANCIAL, INC. MA Reference No. 1000008110060019**

This Attachment consists of the following Terms and Conditions, and any supplementary documentation as defined in this Attachment (collectively, this "Attachment"). This Attachment, together with the LST FINANCIAL, INC. Master Agreement to which it is attached (the "Agreement"), sets forth the terms and conditions pursuant to which LST FINANCIAL, INC. will provide CUSTOMER Financial Services which CUSTOMER now orders or subsequently orders during the term of this Attachment (collectively, the "Service" or "ACH Services").

**1    DEFINITIONS**
1.1   Except as otherwise specifically indicated, the following terms shall have the following meanings in this Attachment (such meanings to be equally applicable to both the singular and plural forms of the terms defined):
1.2   "Entry" means a valid credit or debit transactional entry which contains a valid Standard Entry Class as defined by NACHA.
1.3   "Governmental Requirements" and "Rules" means collectively: all statutes, codes, ordinances, laws, regulations, Rules, orders, Regulation E, and decrees of all governmental authorities (including, without limitation, all federal, state, and local governments, governmental agencies, NACHA, SWACHA, and quasi-governmental agencies).
1.4   "Processing Services" and "ACH Services" means those Services which are necessary to process an entry or file in accordance with the Rules of any System and Regulatory Authority. Such Services shall include, but not be limited to: processing, clearing and settlement, system access, CUSTOMER dispute resolution, system compliance, regulatory compliance, security, fraud control, and activity reporting.
1.5   "Regulation E" means (i) the regulations, all amendments thereto, and official interpretations thereof (12 C.F.R. Part 205) issued by the Board of Governors or the Federal Reserve System implementing Title IX (Electronic Funds Transfer Act) of the Consumer Credit Protection Act, as amended, (15 U.S.C. 1693 et seq.), and (ii) the Electronic Funds Transfer Act, and any amendments thereto.

**2    TERM**
2.1   The term of this Attachment shall be identified in Attachment A.1. Subsequently, this Attachment shall automatically renew for periods of one (1) year; provided, however, that either party may terminate this Attachment with 30 days notice, within 90 days of the renewal, after the initial term expires, without cause, and without breach of this Attachment.

**3    SERVICE COVERED**
3.1   This Attachment covers the LST FINANCIAL, INC. ACH Service within the United States including the Commonwealth of Puerto Rico, Guam, and the United States Virgin Islands.
3.2   LST FINANCIAL shall provide ACH Services to effect debit and/or credit entries between CUSTOMER and an authorizing party via the Automated Clearing House Federal Treasury Management System.
3.3   LST FINANCIAL shall provide ACH return handling to effect credit and/or debit returns between CUSTOMER and an authorizing party via the Automated Clearing House Federal Treasury Management System.
3.4   CUSTOMER hereby acknowledges that ACH Services are not secured or guaranteed funds transfer Services, and that any entry may be returned or reversed by the receiving party.

**4    FEES AND CHARGES**
4.1   LST FINANCIAL shall charge and CUSTOMER hereby agrees to pay fees as set forth in Attachment A.1 – ACH Service Fees.
4.2   CUSTOMER hereby agrees to be automatically debited, via ACH, from the CUSTOMER's bank account on file with LST FINANCIAL, for all ACH Service fees.
4.3   CUSTOMER hereby agrees that all transactional fees will be debited at the time of the transaction, in consolidated amounts as determined by LST FINANCIAL.
4.4   CUSTOMER hereby agrees that all monthly fees will be debited on the first of the month, for that month's Service.
4.5   CUSTOMER hereby agrees that all other fees will be debited at the time the Service is provided, unless elsewhere specified in this Attachment.

4.6   CUSTOMER shall not prevent, return, or dishonor any ACH entry initiated by LST FINANCIAL for fees charged in the rendering of Services. CUSTOMER further understands and hereby agrees that if any entry is returned, unpaid, that CUSTOMER will be charged a fee of not less than the maximum amount allowable by law; ACH Services will be immediately suspended; and CUSTOMER will be charged a reinstatement fee of not less than $250.00 USD.
4.7   LST FINANCIAL, at its sole discretion, may elect to immediately sequester any amount of CUSTOMER funds, to be held in a reserve account, if LST FINANCIAL reasonably determines that the CUSTOMER is not creditworthy, or should LST FINANCIAL determine the exposure risk to LST FINANCIAL is not being adequately mitigated.
4.8   LST FINANCIAL may elect to require an amount to be held in a reserve account to offset any and all risk assumed through the performance of the Service. Said reserve amount will be determined by LST FINANCIAL, reviewed from time to time, and shall be held by LST FINANCIAL for the greater period of (i) 180 days, or (ii) the maximum duration of risk, as determined by the Rules as solely interpreted by LST FINANCIAL.

**5    ORIGINATION**
5.1   LST FINANCIAL shall originate any entry received prior to 1630 hours Central time, on the day the entry is received.
5.2   LST FINANCIAL shall post all returns received prior to 1500 hours Central time, on the day the return is received.
5.3   LST FINANCIAL shall re-initiate any entry previously returned as allowed and determined by the Rules, and shall settle the entry to CUSTOMER as per section 6.

**6    SETTLEMENT**
6.1   Except as defined elsewhere in this Attachment, LST FINANCIAL shall hold all originated ACH entries for a period as specified in Attachment A.1.
6.2   At the end of the hold period, LST FINANCIAL shall gross settle funds, via consolidated entries, to the CUSTOMER. Any return entries will be debited simultaneously, to affect the net amount payable to CUSTOMER.

**7    COMPLIANCE**
7.1   CUSTOMER shall comply with all Governmental Requirements, which includes all Rules, State and Federal laws, and Regulation E, when initiating an Entry into the LST FINANCIAL ACH System. CUSTOMER shall be solely liable for any and all fees, fines, and other financial liability if CUSTOMER fails to comply with all Governmental Requirements.
7.2   CUSTOMER shall process all Notification of Change (NOC) entries and Return entries requiring attention, within 3 days of receipt and agrees not to continue to send entries that are known to have incorrect information. CUSTOMER understands that any entry received with incorrect Information after three (3) days will be charged a fee of not less than $25.00.
7.3   LST FINANCIAL will assist CUSTOMER in maintaining compliance, should the CUSTOMER request assistance; however, it is the CUSTOMER's sole responsibility to ensure compliance. Any request for assistance should be made in writing and addressed to the LST FINANCIAL Department of Corporate Counsel.
7.4   LST FINANCIAL shall maintain the exclusive right to suspend or terminate this Attachment if LST FINANCIAL determines or suspects that CUSTOMER is not fully complying with all Governmental Requirements. CUSTOMER is solely responsible for maintaining CUSTOMER compliance, and is hereby liable for all fees and expenses related to CUSTOMER Compliance, including audits and inspections by LST FINANCIAL, if LST FINANCIAL determines or has reason to believe CUSTOMER is not fully compliant.
7.5   The parties hereto agree to comply with all applicable laws and regulations, including without limitation, such laws and regulations of federal, state and local governmental authorities, the Office of Foreign Assets Control (OFAC) the National Automated Clearing House Association and the Federal Reserve Regulation E (12 C.F.R. Part 205). LST FINANCIAL and Affiliates may from time to time establish operational guidelines with respect to use of the Service by Client, and such rules, regulations and guidelines shall be binding upon Client immediately after delivery thereof to Client. LST

**LST FINANCIAL, INC.**
**CONFIDENTIAL - NOT FOR DISCLOSURE**

10/20/2005

Initials _____

## ATTACHMENT A
## ACH PROCESSING SERVICES

### LST FINANCIAL, INC. MA Reference No. 10000081100600619

FINANCIAL and Affiliates reserve the right to place a hold on funds if evidence exists that transactions have been submitted that are not in compliance with such rules, laws, and regulations and such hold shall remain in force until compliance is assured.

**8    MONITORING AND REPORTING**

8.1   CUSTOMER shall be responsible for every ACH Entry initiated, and shall monitor all ACH activity.

8.2   CUSTOMER shall immediately notify LST FINANCIAL of any transaction CUSTOMER believes to have been fraudulently or erroneously transmitted to LST FINANCIAL.

8.3   CUSTOMER shall notify LST FINANCIAL immediately upon learning any account, data, equipment, or information has been or has the potential to be compromised.

8.4   CUSTOMER shall provide LST FINANCIAL access to all data pertaining to entry immediately upon receiving a written request.

**9    AUTHORIZATION**

9.1   CUSTOMER hereby authorizes LST FINANCIAL to initiate ACH entries to the bank account(s) contained herein, and agrees to maintain an open and available account, with available funds, and provide LST FINANCIAL access to said account(s) during the term of this agreement.

9.2   CUSTOMER agrees to provide not less than three (3) days notice of any account changes, and further agrees to pay any required fees for adding or changing accounts.

9.3   CUSTOMER further agrees that if this Agreement is terminated, this Section 9 shall remain in force, unchanged, until such time as no liability or risk continues to exist for LST FINANCIAL, a timeframe which shall not be less than 90 days, and shall be exclusively determined by LST FINANCIAL. After termination, LST FINANCIAL agrees to only initiate ACH entries only for items related to the period covered by this Agreement.

**10   SECURITY**

10.1  CUSTOMER shall comply with the security procedure requirements described in Section 12 with respect to access to the LST FINANCIAL Platform. CUSTOMER acknowledges that the purpose of such security procedure is for verification of authenticity and not to detect errors in the transmission or contents thereof. No security procedure for the detection of errors has been agreed upon between LST FINANCIAL and the CUSTOMER.

10.2  CUSTOMER is strictly responsible to establish and maintain procedures to safeguard against unauthorized transactions. CUSTOMER warrants that no individual will be allowed to initiate entries in the absence of proper supervision and safeguards, and agrees to take reasonable steps to maintain the confidentiality of the security procedures and any passwords, codes, security devices, and related instructions provided by LST FINANCIAL in connection with the ACH Service and the procedures specified in Section 12.

10.3  If CUSTOMER believes or suspects that any data has been compromised, or has the potential of being compromised, or that the procedures, passwords, codes, or security devices have been discovered, accessed, or otherwise compromised by unauthorized persons, CUSTOMER agrees to immediately notify LST FINANCIAL by phone, and within one (1) hour provide written confirmation, detailing all information related to the compromise. The occurrence of such compromise will not affect any entries made by CUSTOMER in good faith prior to such notification and within a reasonable time period to prevent unauthorized transfers from being further transmitted.

10.4  CUSTOMER shall pay LST FINANCIAL for any entry received by LST FINANCIAL that was transmitted by CUSTOMER, whether or not that entry was erroneous in any respect, or that error would have been detected provided LST FINANCIAL complied with security procedures referred to in Section 12.

10.5  CUSTOMER shall pay LST FINANCIAL for any entry received by LST FINANCIAL that was purported to be transmitted by CUSTOMER, even though entry was erroneous or not authorized by CUSTOMER, provided LST FINANCIAL accepted the entry in good faith and in compliance with the security procedure referred to in Section 12.

**11   EVIDENCE OF AUTHORIZATION**

11.1  CUSTOMER shall obtain all consents and authorizations as defined by the Rules, and shall transmit copies of said authorizations to LST FINANCIAL not less than 5 business days after the entry in which they relate.

11.2  CUSTOMER shall retain original said authorizations for a minimum of 3 years after they expire, and shall provide LST FINANCIAL additional copies or the original immediately upon request. The provisions of this section shall survive the expiration or earlier termination of this Agreement.

**12   SECURITY PROCEDURES**

12.1  LST FINANCIAL requires all transmissions comply with industry standard security standards, which at minimum will be 128 bit, triple DES encryption.

12.2  Client shall take commercially reasonable security precautions to prevent unauthorized or fraudulent use of the ACH Services to Client, its employees, agents and customers. LST FINANCIAL will assign to Client one or more identification numbers and passwords for Client's use in obtaining the Services. Neither LST FINANCIAL nor its Affiliates shall assume any responsibility to discover any possible breach of Client's security. Client shall in immediately notify LST FINANCIAL if it discovers any breach of security of the ACH Services and/or Client access.

**13   TERMINATION**

13.1  LST FINANCIAL may cease rendering the Services to any or all of CUSTOMER'S locations immediately (i) if any of the information provided by CUSTOMER to LST FINANCIAL or Affiliates contains any material misstatement or omission; (ii) if CUSTOMER becomes insolvent or makes an assignment for the benefit of its creditors or any proceeding is commenced by or against LST FINANCIAL or Affiliates under any bankruptcy, liquidation or other debtor's protection law or statute; (iii) if CUSTOMER violates any LST FINANCIAL or Affiliates operating rule, or any applicable Governmental Requirements.

**14   WARRANTY AND LIMITATION OF LIABILITY**

14.1  LST FINANCIAL is a Third-Party Sender and Service bureau, not insurers. Client acknowledges that data processing entails the risk of human and machine errors, omissions, delays and losses, including inadvertent loss or misstatement of data which may give rise to loss or damage. Accordingly, CUSTOMER agrees that (I) LST FINANCIAL AND AFFILIATES SHALL NOT BE LIABLE FOR ANY ERRORS, OMISSIONS, DELAYS OR LOSSES UNLESS CAUSED BY LST FINANCIAL'S WILLFUL MISCONDUCT; (II) IN NO EVENT SHALL LST FINANCIAL OR AFFILIATES BE LIABLE FOR DIRECT, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES; AND (III) IN NO EVENT SHALL THE TOTAL AGGREGATE LIABILITY OF LST FINANCIAL OR AFFILIATES TO CUSTOMER FOR ANY AND ALL CLAIMS, LOSSES OR DAMAGES ARISING UNDER THIS AGREEMENT OR SERVICES PERFORMED HEREUNDER FOR ANY CUSTOMER CLIENT EXCEED THE TOTAL AMOUNT PAID BY CLIENT TO LST FINANCIAL DURING THE PRECEDING MONTH OR $100.00, WHICHEVER IS LESS, EVEN IF LST FINANCIAL OR AFFILIATES HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH POTENTIAL CLAIM, LOSS OR DAMAGE. The foregoing limitation of liability and exclusion of certain damages shall apply regardless of the success or effectiveness of other remedies. Notwithstanding anything to the contrary contained herein, neither LST FINANCIAL nor Affiliates shall be responsible for delays in receipt of CUSTOMER information, processing of CUSTOMER information because of cases beyond its reasonable control, including, without limitation, equipment malfunction, limitations on the availability of telephone or other transmission facilities, failures of communications equipment, or CUSTOMER's failure to properly format and transmit information. CUSTOMER also agrees that neither LST FINANCIAL nor Affiliates shall be responsible for errors in data entry or other Services, programs, hardware, data files, or output provided to, or maintained for CUSTOMER resulting from errors in CUSTOMER'S input, data or from CUSTOMER's failure to comply with the terms and conditions of this Agreement.

**15   INDEMNIFICATION**

15.1  Client shall defend and indemnify LST FINANCIAL, its Affiliates, and its ODFI'S, and hold them harmless from and against any and all

### LST FINANCIAL, INC.
### CONFIDENTIAL - NOT FOR DISCLOSURE

10/20/2005

Initials_____

## ATTACHMENT A
## ACH PROCESSING SERVICES

LST FINANCIAL, INC. MA Reference No. 10000081100600619

Nonlitigable, damages, costs or expenses (including court costs and reasonable attorneys fees) arising as a result of CUSTOMER's breach of this Agreement, failure to comply with National Automated Clearing House Association ("NACHA") rules or regulations or applicable laws, any fraudulent, wrongful or negligent act or omission of CUSTOMER or any of its employees, agents, independent contractors or customers, any unauthorized transmission by Client of data from CUSTOMER, any unauthorized entry by CUSTOMER of information into the ACH network, or any use by CUSTOMER of the ACH Services. The indemnification provisions herein shall survive the expiration or earlier termination of this Agreement.

### 16. FINANCIAL INFORMATION

16.1. CUSTOMER hereby agrees to provide LST FINANCIAL, or otherwise authorizes LST FINANCIAL to obtain, all information regarding CUSTOMER's creditworthiness and financial wherewithal as LST FINANCIAL may from time to time reasonably request including consumer credit reports and business credit reports. CUSTOMER agrees to notify LST FINANCIAL of any material change in any credit information supplied to LST FINANCIAL.

### 17. FORCE MAJEURE

17.3 Neither LST FINANCIAL nor Affiliates shall be liable for failure or delay in performing its obligations hereunder if such failure or delay is due to circumstances beyond LST FINANCIAL's or Affiliates' reasonable control, including without limitation, acts of any governmental body, war, insurrection, sabotage, embargo, fire, earthquake, flood, strike or other labor disturbance, interruption of or delay in transmission, or inability to obtain supplies, telecommunications Services or power used in or equipment needed for the performance of the Services.

### 18. APPROVAL AND SETUP FEES

18.1 CUSTOMER hereby accepts the terms of this agreement, and authorizes LST FINANCIAL to debit the settlement account as specified for Application fees, Account Set-up Fees, and the first month's Gateway Fee, immediately upon acceptance of CUSTOMER for an ACH Origination Account.

**IN WITNESS WHEREOF**, the parties hereto have executed this Attachment to the Master Agreement on this ___19th___ day of __June_____, __2006___.

**CUSTOMER'S SIGNATURE BELOW ACKNOWLEDGES THAT CUSTOMER HAS READ AND UNDERSTANDS EACH OF THE TERMS AND CONDITIONS OF THIS AGREEMENT AND AGREES TO BE BOUND BY THEM.**

CUSTOMER: eDebitPay, LLC.
(Legal Name)

By: _____
(Authorized Signature)

William R. Wilson
(Typed or Printed Name)

President
(Title)

06/19/2006
(Date)

LST FINANCIAL

By: _____
(Authorized Signature)

Gregory Calton
(Typed or Printed Name)

Managing Director
(Title)

06/19/2006
(Date)

LST FINANCIAL, INC.
CONFIDENTIAL - NOT FOR DISCLOSURE

Initials __WW__

10/20/2005

## ATTACHMENT A.1.(b)
## ACH PROCESSING FEE SCHEDULE

LST FINANCIAL, INC. MA Reference No. 10000081100600619

| | | | | | |
|---|---|---|---|---|---|
| **ACH Processing Term** | 3 | Years | **Per Item Hold Time** | 12 | Days |
| **Per Transaction Limit** | $ 159.95 | USD | **Per Return Hold Time** | 12 | Days |
| **Per Day Limit** | $ 250,000.00 | USD | **Interface Method** | WEPS software | |
| **Initial Reserve Amount** | $ 0 | USD | **Escrow Percentage/Term** | 0 % for 0 | Days |

| Approved ACH SEC Codes | Per Transaction Fee | Per Return Fee |
|---|---|---|
| ☐ ARC (Consumer Lockbox) | _____ % + $ _____ USD | $ _____ USD |
| ☐ CBR (Canada/Europe) | _____ % + $ _____ USD | $ _____ USD |
| ☐ CBR (Mexico) | _____ % + $ _____ USD | $ _____ USD |
| ☐ CCD | _____ % + $ _____ USD | $ _____ USD |
| ☐ CIE | _____ % + $ _____ USD | $ _____ USD |
| ☐ CTX | _____ % + $ _____ USD | $ _____ USD |
| ☐ MTE | _____ % + $ _____ USD | $ _____ USD |
| ☐ PBR (Canada/Europe) | _____ % + $ _____ USD | $ _____ USD |
| ☐ PBR (Mexico) | _____ % + $ _____ USD | $ _____ USD |
| ☐ POP | _____ % + $ _____ USD | $ _____ USD |
| ☐ POS | _____ % + $ _____ USD | $ _____ USD |
| ☐ PPD | _____ % + $ _____ USD | $ _____ USD |
| ☐ RCK | _____ % + $ _____ USD | $ _____ USD |
| ☐ SHR | _____ % + $ _____ USD | $ _____ USD |
| ☐ TEL | _____ % + $ _____ USD | $ 0.50 USD |
| ☑ WEB | 0 % + $ 0.50 USD | $ _____ USD |
| ☐ Other: | _____ % + $ _____ USD | $ _____ USD |

CONFIDENTIAL AND PROPRIETARY – NOT FOR DISCLOSURE

Initials_____

10/20/2005

## ATTACHMENT A.1.(b)
## ACH PROCESSING FEE SCHEDULE

LST FINANCIAL, INC. MA Reference No. <u>10000081100600619</u>

| Returned Transaction Rate | | Rate |
|---|---|---|
| | Per Item Returned (RET or NOC) | $ 0.50 USD |
| | Per Item Charged Back Fee | $ 2.95 USD |
| | Re-initiation Fee per Item (RET Only) | $ 0.50 USD |
| **Other Charges** | | Rate |
| Over Limit Fee | Per day | $ 25.00 USD |
| Negative Verification | Verification Fee per Item | $ 0 USD |
| Item Guarantee | Per Item | N/A % of the total value of each item |
| Reversed Transaction Rate | Per Item Reversed or Contested | $ 25.00 USD |
| Professional Services | Per Hour (1 Hour minimum, 15 min billed increments) | $ 250.00 USD |
| Application Fee | One-Time | $ 350.00 USD |
| Monthly Service Fee | Monthly | $ 50.00 USD |
| Minimum Monthly Billed Amount | Monthly | $ 1,300 USD |
| Agreement Termination Fee | One-Time | $ 2,500 USD or 25% of monthly revenue for remaining term, averaged over last 3 months, whichever is greater. |

LST Financial Agreement for Services
Attachment A.1(b) – ACH Fee Schedule
CONFIDENTIAL AND PROPRIETARY – NOT FOR DISCLOSURE

10/20/2005

Initials_____

## ATTACHMENT H
## CONSOLIDATED RETURN SERVICES

### LST FINANCIAL, INC. MA Reference No. 10000081100600619

This Attachment consists of the following Terms and Conditions, and any supplementary documentation as defined in this Attachment (collectively, this "Attachment"). This Attachment, together with the LST FINANCIAL, INC. Master Agreement to which it is attached (the "Agreement"), sets forth the terms and conditions pursuant to which LST FINANCIAL, INC. will provide CUSTOMER Financial Services which CUSTOMER now orders or subsequently orders during the term of this Attachment (collectively, the "Service" or "Consolidated Return Services").

**1    DEFINITIONS**

1.1   Except as otherwise specifically indicated, the following terms shall have the following meanings in this Attachment (such meanings to be equally applicable to both the singular and plural forms of the terms defined):

1.2   "Entry" means a valid credit or debit transactional entry which contains a valid Standard Entry Class as defined by NACHA.

1.3   "Governmental Requirements" and "Rules" means collectively: all statutes, codes, ordinances, laws, regulations, Rules, orders, Regulation E, and decrees of all governmental authorities (including, without limitation, all federal, state, and local governments, governmental agencies, NACHA, SWACHA, and quasi-governmental agencies).

1.4   "Processing Services", "ACH Services", and "Consolidated Return Services" mean those Services which are necessary to process an entry or file in accordance with the Rules of any System and Regulatory Authority. Such Services shall include, but not be limited to: processing, clearing and settlement, system access, CUSTOMER dispute resolution, system compliance, regulatory compliance, security, fraud control, and activity reporting.

1.5   "Regulation E" means (i) the regulations, all amendments thereto, and official interpretations thereof (12 C.F.R. Part 205) issued by the Board of Governors of the Federal Reserve System implementing Title IX (Electronic Funds Transfer Act) of the Consumer Credit Protection Act, as amended, (15 U.S.C. 1693 et seq.), and (ii) the Electronic Funds Transfer Act, and any amendments thereto.

**2    TERM**

2.1   The term of this Attachment shall be as identified in Attachment A.1. Subsequently, this Attachment shall automatically renew for periods of one (1) year; provided, however, that either party may terminate this Attachment with 30 days notice, within 90 days of the renewal, after the initial term expires, without cause, and without breach of this Attachment.

**3    SERVICE COVERED**

3.1   This Attachment covers the LST FINANCIAL Consolidated Return Service within the United States including the Commonwealth of Puerto Rico, Guam, and the United States Virgin Islands.

3.2   LST FINANCIAL shall provide ACH Services to effect debit and/or credit entries between CUSTOMER and an authorizing party via the Automated Clearing House Federal Treasury Management System.

3.3   LST FINANCIAL shall provide Consolidated Return handling to effect credit and/or debit returns between CUSTOMER and an authorizing party via the Automated Clearing House Federal Treasury Management System.

3.4   CUSTOMER hereby acknowledges that Consolidated Return Services are not secured or guaranteed funds transfer Services, and that any entry may be returned or reversed by the receiving party.

3.5   Customer hereby authorizes and charges LST FINANCIAL with the management and handling of return, re-initiation, and processing of items, including any related fees, as defined by the Rules. CUSTOMER hereby transfers any actual or interpreted right to collect said fees directly to LST FINANCIAL.

3.6   LST FINANCIAL shall monitor all returns for ineligible items, and shall on the CUSTOMER's behalf be charged with dishonoring any eligible return as defined by the Rules. CUSTOMER understands this is a Service being provided by LST FINANCIAL, and that LST FINANCIAL is not and shall not guarantee any return item; however, LST FINANCIAL will make every reasonable effort to recover eligible items returned to the CUSTOMER via the Services.

**4    FEES AND CHARGES**

4.1   LST FINANCIAL shall charge and CUSTOMER hereby agrees to pay fees as set forth in Attachment A.1 – ACH Service Fees.

4.2   CUSTOMER hereby agrees to be automatically debited, via ACH, from the CUSTOMER's bank account on file with LST FINANCIAL, for all Consolidated Return Service fees.

4.3   CUSTOMER hereby agrees that all transactional fees will be debited at the time of the transaction, in consolidated amounts as determined by LST FINANCIAL.

4.4   CUSTOMER hereby agrees that all monthly fees will be debited on the first of the month, for that month's Service.

4.5   CUSTOMER hereby agrees that all other fees will be debited at the time the Service is provided, unless elsewhere specified in this Attachment.

4.6   CUSTOMER shall not prevent, return, or dishonor any ACH entry initiated by LST FINANCIAL for fees charged in the rendering of Services. CUSTOMER further understands and hereby agrees that if any entry is returned, unpaid, that CUSTOMER will be charged a fee of not less than the maximum amount allowable by law; Consolidated Return Services will be immediately suspended; and CUSTOMER will be charged a reinstatement fee of not less than $250.00 USD.

4.7   LST FINANCIAL, at its sole discretion, may elect to immediately sequester any amount of CUSTOMER funds, to be held in a reserve account, if LST FINANCIAL reasonably determines that the CUSTOMER is not creditworthy, or should LST FINANCIAL determine the exposure risk to LST FINANCIAL is not being adequately mitigated.

4.8   LST FINANCIAL may elect to require an amount to be held in a reserve account to offset any and all risk assumed through the performance of the Service. Said reserve amount will be determined by LST FINANCIAL, reviewed from time to time, and shall be held by LST FINANCIAL for the greater period of (i) 180 days, or (ii) the maximum duration of risk, as determined by the Rules as solely interpreted by LST FINANCIAL.

**5    ORIGINATION**

5.1   LST FINANCIAL shall originate any entry received prior to 1630 hours Central time, on the day the entry is received.

5.2   LST FINANCIAL shall post all returns received prior to 1500 hours Central time, on the day the return is received.

5.3   LST FINANCIAL shall re-initiate any entry previously returned as allowed and determined by the Rules, and shall settle the entry to CUSTOMER as per section 6.

**6    SETTLEMENT**

6.1   Except as defined elsewhere in this Attachment, LST FINANCIAL shall hold all originated Consolidated Return entries for a period as specified in Attachment A.1.

6.2   At the end of the hold period, LST FINANCIAL shall gross settle funds, via consolidated entries, to the CUSTOMER. Any return entries will be debited simultaneously, to affect the net amount payable to CUSTOMER.

**7    COMPLIANCE**

7.1   CUSTOMER shall comply with all Governmental Requirements, which includes all Rules, State and Federal laws, and Regulation E, when initiating an Entry into the LST FINANCIAL ACH System. CUSTOMER shall be solely liable for any and all fees, fines, and other financial liability if CUSTOMER fails to comply with all Governmental Requirements.

7.2   LST FINANCIAL shall process all Notification of Change (NOC) entries and Return entries requiring attention, within 3 days of receipt and agrees not to continue to send entries that are known to have incorrect information. CUSTOMER understands that any entry received with incorrect information after three (3) days will be charged a fee of not less than $25.00.

7.3   LST FINANCIAL will assist CUSTOMER in maintaining compliance, should the CUSTOMER request assistance; however, it is the CUSTOMER's sole responsibility to ensure compliance. Any request for assistance should be made in writing and addressed to the LST FINANCIAL Department of Corporate Counsel.

7.4   LST FINANCIAL shall maintain the exclusive right to suspend or terminate this Attachment if LST FINANCIAL determines or suspects that CUSTOMER is not fully complying with all Governmental

### LST FINANCIAL, INC.
### CONFIDENTIAL - NOT FOR DISCLOSURE

Initials_____

10/20/2005

## ATTACHMENT H
## CONSOLIDATED RETURN SERVICES

LST FINANCIAL, INC. MA Reference No. ___10000081100600619___

Requirements. CUSTOMER is solely responsible for maintaining CUSTOMER compliance, and is hereby liable for all fees and expenses related to CUSTOMER Compliance, including audits and inspections by LST FINANCIAL, if LST FINANCIAL determines or has reason to believe CUSTOMER is not fully compliant.

7.5 The parties hereto agree to comply with all applicable laws and regulations, including without limitation, such laws and regulations of federal, state and local governmental authorities, the Office of Foreign Assets Control (OFAC) the National Automated Clearing House Association and the Federal Reserve Regulation E (12 C.F.R. Part 205). LST FINANCIAL and Affiliates reserve the right from time to time establish operational guidelines with respect to use of the Service by Client, and such rules, regulations and guidelines shall be binding upon Client immediately after delivery thereof to Client. LST FINANCIAL and Affiliates reserve the right to place a hold on funds if evidence exists that transactions have been submitted that are not in compliance with such rules, laws, and regulations and such hold shall remain in force until compliance is assured.

**8   MONITORING AND REPORTING**

8.1 CUSTOMER shall be responsible for every ACH Entry initiated, and shall monitor all ACH activity.

8.2 CUSTOMER shall immediately notify LST FINANCIAL of any transaction CUSTOMER believes to have been fraudulently or erroneously transmitted to LST FINANCIAL.

8.3 CUSTOMER shall notify LST FINANCIAL immediately upon learning any account, data, equipment, or information has been or has the potential to be compromised.

8.4 CUSTOMER shall provide LST FINANCIAL access to all data pertaining to entry immediately upon receiving a written request.

**9   AUTHORIZATION**

9.1 CUSTOMER hereby authorizes LST FINANCIAL to initiate ACH entries to the bank account(s) contained herein, and agrees to maintain an open and available account, with available funds, and provide LST FINANCIAL access to said account(s) during the term of this agreement.

9.2 CUSTOMER agrees to provide not less than three (3) days notice of any account changes, and further agrees to pay any required fees for adding or changing accounts.

9.3 CUSTOMER further agrees that if this Agreement is terminated, this Section 9 shall remain in force, unchanged, until such time as no liability or risk continues to exist for LST FINANCIAL, a timeframe which shall not be less than 90 days, and shall be exclusively determined by LST FINANCIAL. After termination, LST FINANCIAL agrees to only initiate ACH entries only for items related to the period covered by this Agreement.

**10   SECURITY**

10.1 CUSTOMER shall comply with the security procedure requirements described in Section 12 with respect to access to the LST FINANCIAL Platform. CUSTOMER acknowledges that the purpose of such security procedure is for verification of authenticity and not to detect errors in the transmission or contents thereof. No security procedure for the detection of errors has been agreed upon between LST FINANCIAL and the CUSTOMER.

10.2 CUSTOMER is strictly responsible to establish and maintain procedures to safeguard against unauthorized transactions. CUSTOMER warrants that no individual will be allowed to initiate entries in the absence of proper supervision and safeguards, and agrees to take reasonable steps to maintain the confidentiality of security procedures and any passwords, codes, security devices, and related instructions provided by LST FINANCIAL in connection with the Consolidated Return Service and the procedures specified in Section 12.

10.3 If CUSTOMER believes or suspects that any data has been compromised, or has the potential of being compromised, or that the procedures, passwords, codes, or security devices have been discovered, accessed, or otherwise compromised by unauthorized persons, CUSTOMER agrees to immediately notify LST FINANCIAL by phone, and within one (1) hour provide written confirmation, detailing all information related to the compromise. The occurrence of such compromise will not affect any entries made by CUSTOMER in good faith prior to such notification and within a reasonable time

period to prevent unauthorized transfers from being further transmitted.

10.4 CUSTOMER shall pay LST FINANCIAL for any entry received by LST FINANCIAL that was transmitted by CUSTOMER, whether or not that entry was erroneous in any respect, or that error would have been detected provided LST FINANCIAL complied with security procedures referred to in Section 12.

10.5 CUSTOMER shall pay LST FINANCIAL for any entry received by LST FINANCIAL that was purported to be transmitted by CUSTOMER, even though entry was erroneous or not authorized by CUSTOMER, provided LST FINANCIAL accepted the entry in good faith and in compliance with the security procedure referred to in Section 12.

**11   EVIDENCE OF AUTHORIZATION**

11.1 CUSTOMER shall obtain all consents and authorizations as defined by the Rules, and shall transmit copies of said authorizations to LST FINANCIAL not less than 5 business days after the entry in which they relate.

11.2 CUSTOMER shall retain original said authorizations for a minimum of 3 years after they expire, and shall provide LST FINANCIAL additional copies or the original immediately upon request. The provisions of this section shall survive the expiration or earlier termination of this Agreement.

**12   SECURITY PROCEDURES**

12.1 LST FINANCIAL requires all transmissions comply with industry standard security standards, which at minimum will be 128 bit, triple DES encryption.

12.2 Client shall take commercially reasonable security precautions to prevent unauthorized or fraudulent use of the Consolidated Return Services to Client, its employees, agents and customers. LST FINANCIAL will assign to Client one or more identification numbers and passwords for Client's use in obtaining the Services. Neither LST FINANCIAL nor its Affiliates shall assume any responsibility to discover any possible breach of Client's security. Client shall in immediately notify LST FINANCIAL if it discovers any breach of security of the Consolidated Return Services and/or Client access.

**13   TERMINATION**

13.1 LST FINANCIAL may cease rendering the Services to any or all of CUSTOMER's locations immediately (i) if any of the information provided by CUSTOMER to LST FINANCIAL or Affiliates contains any material misstatement or omission; (ii) if CUSTOMER becomes insolvent or makes an assignment for the benefit of its creditors or any proceeding is commenced by or against LST FINANCIAL or Affiliates under any bankruptcy, liquidation or other debtor's protection law or statute; (iii) if CUSTOMER violates any LST FINANCIAL or Affiliates operating rule, or any applicable Governmental Requirements.

**14   WARRANTY AND LIMITATION OF LIABILITY**

14.1 LST FINANCIAL is a Third-Party Sender and Service bureau, not an insurer. Client acknowledges that data processing entails the risk of human and machine errors, omissions, delays and losses, including inadvertent loss or misstatement of data which may give rise to loss or damage. Accordingly, CUSTOMER agrees that (I) LST FINANCIAL AND AFFILIATES SHALL NOT BE LIABLE FOR ANY ERRORS, OMISSIONS, DELAYS OR LOSSES UNLESS CAUSED BY LST FINANCIAL'S WILLFUL MISCONDUCT; (II) IN NO EVENT SHALL LST FINANCIAL OR AFFILIATES BE LIABLE FOR DIRECT, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES; AND (III) IN NO EVENT SHALL THE TOTAL AGGREGATE LIABILITY OF LST FINANCIAL OR AFFILIATES TO CUSTOMER FOR ANY AND ALL CLAIMS, LOSSES OR DAMAGES ARISING UNDER THIS AGREEMENT OR SERVICES PERFORMED HEREUNDER FOR ANY CUSTOMER CLIENT EXCEED THE TOTAL AMOUNT PAID BY CLIENT TO LST FINANCIAL DURING THE PRECEDING MONTH OR $100.00, WHICHEVER IS LESS, EVEN IF LST FINANCIAL OR AFFILIATES HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH POTENTIAL CLAIM, LOSS OR DAMAGE. The foregoing limitation of liability and exclusion of certain damages shall apply regardless of the success or effectiveness of other remedies. Notwithstanding anything to the contrary contained herein, neither LST FINANCIAL nor Affiliates shall be responsible for delays in receipt of CUSTOMER Information, processing of CUSTOMER Information

**LST FINANCIAL, INC.**
**CONFIDENTIAL - NOT FOR DISCLOSURE**

Initials_____

## ATTACHMENT H
## CONSOLIDATED RETURN SERVICES

LST FINANCIAL, INC. MA Reference No. 10000081100600619

because of cases beyond its reasonable control, including, without limitation, equipment malfunction, limitations on the availability of telephone or other transmission facilities, failures of communications equipment, or CUSTOMER'S failure to properly format and transmit Information. CUSTOMER also agrees that neither LST FINANCIAL nor Affiliates shall be responsible for errors in data entry or other Services, programs, hardware, data files, or output provided to, or maintained for CUSTOMER resulting from errors in CUSTOMER'S input, data or from CUSTOMER'S failure to comply with the terms and conditions of this Agreement.

### 15   INDEMNIFICATION
15.1 Client shall defend and indemnify LST FINANCIAL, its Affiliates, and its ODFIS, and hold them harmless from and against any and all liability, loss, damages, costs or expenses (including court costs and reasonable attorneys fees) arising as a result of CUSTOMER's breach of this Agreement, failure to comply with National Automated Clearing House Association ("NACHA") rules or regulations or applicable laws, any fraudulent, wrongful or negligent act or omission of CUSTOMER or any of its employees, agents, independent contractors or customers, any unauthorized transmission by Client of data from CUSTOMER, any unauthorized entry by CUSTOMER of Information into the ACH network, or any use by CUSTOMER of the Consolidated Return Services. The indemnification provisions herein shall survive the expiration or earlier termination of this Agreement.

### 16   FINANCIAL INFORMATION

16.1 CUSTOMER hereby agrees to provide LST FINANCIAL, or otherwise authorizes LST FINANCIAL to obtain, all Information regarding CUSTOMER'S creditworthiness and financial wherewithal as LST FINANCIAL may from time to time reasonably request including consumer credit reports and business credit reports. CUSTOMER agrees to notify LST FINANCIAL of any material change in any credit Information supplied to LST FINANCIAL.

### 17   FORCE MAJEURE
17.1 Neither LST FINANCIAL nor Affiliates shall be liable for failure or delay in performing its obligations hereunder if such failure or delay is due to circumstances beyond LST FINANCIAL'S or Affiliates' reasonable control, including without limitation, acts of any governmental body, war, insurrection, sabotage, embargo, fire, earthquake, flood, strike or other labor disturbance, interruption of or delay in transportation, or inability to obtain supplies, telecommunications Services or power used in or equipment needed for the performance of the Services.

### 18   APPROVAL AND SETUP FEES
18.1 CUSTOMER hereby accepts the terms of this agreement, and authorizes LST FINANCIAL to debit the settlement account as specified for Application fees, Account Set-Up Fees, and the first month's Gateway Fee immediately upon acceptance of CUSTOMER for a Consolidated Return Origination Account.

**IN WITNESS WHEREOF,** the parties hereto have executed this Attachment to the Master Agreement on this ___19th___ day of ___June___, ___2006___ :

---

**CUSTOMER'S SIGNATURE BELOW ACKNOWLEDGES THAT CUSTOMER HAS READ AND UNDERSTANDS EACH OF THE TERMS AND CONDITIONS OF THIS AGREEMENT AND AGREES TO BE BOUND BY THEM.**

---

**CUSTOMER:** eDebitPay, LLC.
(Legal Name)

By: _____
(Authorized Signature)

William R. Wilson
(Typed or Printed Name)

President
(Title)

06/19/2006
(Date)

**LST FINANCIAL**

By: _____
(Authorized Signature)

Gregory Colton
(Typed or Printed Name)

Managing Director
(Title)

06/19/2006
(Date)

LST FINANCIAL, INC.
CONFIDENTIAL - NOT FOR DISCLOSURE

10/20/2005

Initials _____

## MUTUAL CONFIDENTIALITY AGREEMENT

This Mutual Confidentiality Agreement (the "Agreement"), dated as of __06/19/2006_____ (the "Effective Date"), is between **LST Financial, Inc.,** whose principal place of business is 7333 Caribou, San Antonio, TX 78238, ("Company") and_____EDebitPay, LLC_____, whose principal place of business is _5301 Laurel Canyon Blvd. Valley Village CA. 91607_____, ("Customer") in connection with Company and Customer considering future business transactions. As an express condition to each party disclosing Confidential Information to the other party in connection with a possible business transaction, both parties agree as follows:

1. **Non-Disclosure.** The party receiving Confidential Information and any employee, director, officer, accountants, professional advisors (e.g. attorneys, consultants), subsidiary or affiliate of it (the "Receiving Party") shall hold all Confidential Information (as defined in Section 2) in strict confidence and shall not disclose any Confidential Information to any third party. Receiving Party shall disclose Confidential Information only to employees who need to know such information to evaluate the possible business transaction with the party disclosing such Confidential Information (the "Disclosing Party"), and who have signed agreements that obligate them to treat Confidential Information as required under this Agreement. Receiving Party shall not use any Confidential Information for any purpose except to evaluate the possible business transaction. Receiving Party shall take all reasonable measures to protect the confidentiality and avoid the unauthorized use, disclosure, publication, or dissemination of Confidential Information; provided, however, that such measures shall be no less stringent than measures taken to protect its own confidential and proprietary information.

2. **Confidential Information.** "Confidential Information" in this Agreement means all information and any idea in whatever form, tangible or intangible, whether disclosed to or learned by Receiving Party, pertaining in any manner to the business of Disclosing Party or to Disclosing Party's affiliates, subsidiaries, consultants or business associates, unless (i) the information is or becomes publicly known through lawful means; (ii) the information was rightfully in Receiving Party's possession or part of Receiving Party's general knowledge prior to exploring the possibility of a business transaction of mutual interest; (iii) the information is disclosed to Receiving Party without confidential or proprietary restriction by a third party who rightfully possesses the information without confidential or proprietary restrictions; or (iv) the Receiving Party can demonstrate that the information was developed independently by the Receiving Party without reference to the Confidential Information. "Confidential Information" includes, without limitation, the following: (a) schematics, ideas, techniques, employee suggestions, development tools and processes, computer printouts, computer programs, design drawings and manuals, and improvements; (b) information about costs, profits, markets and sales; (c) plans for future development and new product concepts; and (d) all documents, books, papers, drawings, models, sketches, Customer lists and other data of any kind and description, including electronic data recorded or retrieved by any means, that have been or will be given to Receiving Party by Disclosing Party, as well as written or verbal instructions or comments.

3. **Continuing Obligation.** The covenants pertaining to non-disclosure shall remain in full force indefinitely, unless Disclosing Party specifically, and in writing, agrees to release all or part of Confidential Information from the non-disclosure restrictions imposed herein. Upon conclusion or termination of discussions between Company and Customer, or at any time at Disclosing Party's request, (i) Receiving Party shall (a) return immediately to Disclosing Party all materials (in written, electronic or other form) containing or constituting Confidential Information, including any copies, or (b) completely destroy such Confidential Information, providing written certification of such destruction by an officer of the Company; and (ii) Receiving Party shall not use Confidential Information in any way for any purpose.

4. **Notice of Disclosure.** In the event that Receiving Party is requested or becomes legally compelled to disclose any Confidential Information of the other party, it is agreed that such party will provide the other with prompt written notice of such request(s) to enable the Disclosing Party to seek a protective order to protect and preserve the confidential nature of the Confidential Information. In such event, each party agrees that it will furnish only that portion of the Confidential Information which is legally required and will exercise reasonable efforts to obtain reliable assurance that confidential treatment will be accorded to that portion of the Confidential Information and other information which is being disclosed. Each party shall immediately notify the other upon discovery of any loss or unauthorized disclosure of the Confidential Information of the other party.

5. **Confidentiality of Discussions.** Neither party shall disclose the existence of discussions between the parties hereto or the nature or substance of those discussions.

6.  **Governing Law.** This Agreement will be governed by and construed in accordance with the laws of the State of Texas without giving effect to its conflict of law rules. The parties intend that Section 7 be enforced to the greatest extent in time, area and degree of participation as is permitted by law.

7.  **Remedies.** Receiving Party agrees that the unauthorized disclosure or use of Confidential Information will cause irreparable harm and significant injury, which may be difficult to ascertain. Receiving Party recognizes that its violation of this Agreement could cause Disclosing Party irreparable harm and significant injury, the amount of which may be extremely difficult to estimate, thus, making any remedy at law or in damages inadequate. Therefore, Receiving Party agrees that Disclosing Party shall have the right to apply to any court of competent jurisdiction for an order restraining any breach or threatened breach of this Agreement and for any other relief Disclosing Party deems appropriate. This right shall be in addition to any other remedy available to Disclosing Party in law or equity.

8.  **No Obligation.** Nothing herein shall obligate either party to proceed with any transaction between them, and each party reserves the right, in its sole discretion, to terminate the discussions contemplated by this Agreement concerning the business transaction.

9.  **No License.** Nothing in this Agreement is intended to grant any rights to either party under any patent, copyright, trade secret or other intellectual property right no shall this Agreement grant either party any rights in or to the other party's Confidential Information, except the limited right to review such Confidential Information solely for the purposes of determining whether to enter into the proposed business transaction between the parties.

10.  **Severability.** In the event any term of this Agreement is found by any court to be void or otherwise unenforceable, the reminder of this Agreement shall remain valid and enforceable as though such term were absent upon the date of its execution.

11.  **General.** This Agreement shall be binding upon and for the benefit of Company and Customer and their successors and assigns. Failure to enforce any provision of this Agreement shall not constitute a waiver of any term hereof. This Agreement supersedes and replaces any existing agreement entered into by Company and Customer relating generally to the same subject matter, and may be modified only in writing signed by the parties. This Agreement contains the entire agreement between the parties with respect to the subject matter hereof.

12.  **Notice.** All notice or reports permitted or required under this Agreement shall be in writing and shall be delivered by personal delivery, electronic mail, facsimile transmission, or by certified mail, return receipt required, and shall be deemed given upon personal delivery five (5) days after deposit in the mail, or upon acknowledgement of receipt of electronic transmission. Notice shall be sent to the addresses set forth in the introductory paragraph or such other address as either party may specify in writing.

**IN WITNESS WHEREOF,** the parties hereto have caused this Agreement to be executed as of the Effective Date above.

Company: LST Financial, Inc.

By:

Name:

Title:

EDebitPay, LLC

By:

Name:    William R. Wilson

Title:    President

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

LST FINANCIAL, INC.

## DEFENDANTS

EDEBITPAY, LLC.

**(b)** County of Residence of First Listed Plaintiff  **Bexar**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**SA07CA1030 OG**

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Law Office of Robert Rapp, 201 E. Commerce, Suite 370, San Antonio, Texas 78205, (210) 224-4664

Attorney's (If Known)

Nathan, Sheridan & Goodman
22974 El Toro Rd., Suite 200, Lake Forret, CA 92632, (949) 274-8962

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☒ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. Section 1332

Brief description of cause:
Claim for breach of contract.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):
JUDGE                          DOCKET NUMBER

DATE
December 18, 2007

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

# FILING FEE RECEIPT COPY

AO82 SWEDA
(Rev. 4/90)

TRIPLICATE
RECEIPT FOR PAYMENT
UNITED STATES DISTRICT COURT
for the
WESTERN DISTRICT OF TEXAS
at SA 12-18-07

12-19-07

208855

| Fund | |
|---|---|
| 6855XX | Deposit Funds |
| 604700 | Registry Funds |
| | General and Special Funds |
| 508800 | Immigration Fees |
| 085000 | Attorney Admission Fees |
| 086900 | Filing Fees |
| 322340 | Sale of Publications |
| 322350 | Copy Fees |
| 322360 | Miscellaneous Fees |
| 143500 | Interest |
| 322380 | Recoveries of Court Costs |
| 322386 | Restitution to U.S. Government |
| 121000 | Conscience Fund |
| 129900 | Gifts |
| 504100 | Crime Victims Funds |
| 613300 | Unclaimed Monies |
| 510000 | Civil Filing Fee (1/2) |
| 510100 | Registry Fee |

086400-100.00

CASE REFERENCE:

SA 07 CA 1030-OG

RECEIVED FROM Law Offices of Robert Rapp, P.C.

Ck# 1198

$350.00

LST. Financial, Inc. v. Eddatpau

DEPUTY CLERK

Checks and drafts are accepted subject to collection and full
credit will only be given when the check or draft has been
accepted by the financial institution on which it was drawn.

TRIPLICATE

Wed Dec 19 09:01 2007

UNITED STATES DISTRICT COURT
SAN ANTONIO, TX

Receipt No.  0500   00209895
Cashier      pugh

Tender: Check
Check Number: 1198

DO Code   Div No
4680      5

| Sub Acct | Type | Tender | Amount |
|---|---|---|---|
| 1:086900 | N | 2 | 60.00 |
| 2:086400 | N | 2 | 100.00 |
| 3:510000 | N | 2 | 190.00 |

Total Amount:                350.00

NEW CIVIL CASE FILING FEE FOR
SA07CA1030. LST FINANCIAL, INC. V.
EDUATPAY LLC. MR #208855. CK BY ROBERT
RAPP PC
----------------------------------------

Checks and money order drafts are
accepted subject to collection and full
credit will only be given when the
check or draft has been accepted by the
financial institution on which it was
drawn.

(WHITE)